# IN THE COURT OF APPEALS OF IOWA

No. 17-1769
Filed February 20, 2019

**LEROY DEAN HAINES,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Webster County, Thomas J. Bice,

Judge.


The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**


Thomas Hurd of Glazebrook, Greenberg & Hurd, LLP, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee State.


Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

LeRoy Haines appeals the denial of his second application for postconviction relief (PCR).

In 1999, Haines was charged with two counts of sexual abuse in the second degree—one count relating to A.H. and one count relating to S.H. At his bench trial, Haines did not dispute any of the State's evidence that the sex acts occurred; rather, he based his defense on a claim of insanity. The district court made the following findings:

> On or about April 21, 1999, [the mother of A.H. and S.H.] first learned of improper contact between [Haines] and [the children]. . . . [The mother] asked [A.H.] about that incident and [A.H.] confirmed what [the mother's] father had told [the mother]. [The mother] then confronted [Haines] and he admitted that he had both "french kissed" [A.H.] and had touched [S.H.'s] private parts. [The mother] became enraged, slapped [Haines] and then called the police.
> Two police officers responded to her call: Officer Trent Olson and Lieutenant Dennis Memka.
> . . . .
> [Haines] was using the telephone when Memka and Olson approached him. They told him to put the phone down which he did. During the initial questioning, [Haines] admitted that during the previous month and a half he had sexual contact with [A.H. and S.H.] He admitted that he had kissed both of the girls, kissed their "boobs," rubbed their vaginas and butts and had inserted his fingers into their vaginas. He also told the police officers that the girls had kissed his penis. [Haines] was immediately taken to the Law Enforcement Center in Fort Dodge where a more formal interview was conducted. . . .
> . . . .
> [Haines] stated during the interview that he had found [A.H., S.H., and a third child] engaged in sexual exploration. Consequently, he did what he did to the girls as punishment and by way of encouraging them not to engage in that type of activity in the future. . . .
> On April 27, 1999 Dr. Dan Cole conducted a culposcopic exam on [A.H.] and [S.H.] Dr. Cole has been a family practitioner for twenty-six years and has conducted culposcopic examinations for eight or nine years. He is certified in the use of the machine, and has done over 800 such exams.

Dr. Cole testified that [A.H.] had a tear in her hymen that had occurred within the past week to ten days. She had an older injury in the vaginal area as well. He stated that usually the only reason for tears such as [A.H.'s] is a sexual assault of some type.

With respect to [S.H.], Dr. Cole testified that she had two older tears in her hymen and had a newer tear that had occurred within a week or two of his examination. He testified that those tears were caused by assault.

According to Dr. Cole, both girls' injuries were the result of penetration, partial penetration or attempted penetration.

Both of the victims testified that [Haines] had engaged in sexual conduct with them on several occasions. Each of the girls graphically described incidents of inappropriate touching that had been visited upon them by [Haines], and each described the touching as being painful. Those episodes were supported by the findings of Dr. Cole.

The court concluded Haines had not met his burden to establish his insanity defense and convicted Haines of both charges. He was sentenced to two consecutive terms of not more than twenty-five years.

Haines filed the PCR application at issue in 2016.[1] He asserted the State had committed a *Brady* violation[2] by failing to disclose exculpatory evidence and statements made by A.H. during the course of the underlying proceedings and that the nondisclosure prejudiced him.[3] Haines's claim is based upon an anatomical drawing; Haines asserts A.H. was asked during trial preparation with the county

---

[1] The PCR application at issue is Haines's second PCR application. Haines directly appealed his convictions, arguing trial counsel provided ineffective assistance. We found Haines's claim to be without merit and affirmed his convictions. *See State v. Haines*, No. 01-1236, 2002 WL 31525763, at *2 (Iowa Ct. App. Nov. 15, 2002). Additionally, Haines filed an application for PCR in 2004, which the PCR court denied. We affirmed the PCR court. *See Haines v. State*, No. 05-0656, 2006 WL 1409099, at *1 (Iowa Ct. App. May 24, 2006).

[2] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding failure of prosecution to disclose evidence that may be favorable to the accused is a violation of the Due Process Clause of the Fourteenth Amendment).

[3] Haines also raised a number of issues pro se. The court found those claims were untimely and dismissed them pursuant to the statute of limitations. Haines does not challenge on appeal the court's ruling as to his pro se claims.

attorney to place a mark on the drawing that corresponded to where Haines had touched her. He argues she made no mark, which indicates Haines did not touch her, and that the State failed to turn over the unmarked drawing before trial.[4]

A trial on the merits of Haines's second PCR application took place in 2017. According to their testimony and the evidence introduced at trial, neither Haines's trial attorney nor his attorney from his first PCR action ever received a blank drawing from the State.

In its written ruling, the PCR court denied Haines' application for PCR. The court did not explicitly consider whether Haines's evidence that the State failed to disclose the blank drawing met the ground-of-fact exception. *See, e.g.*, *State v. Harrington*, 659 N.W.2d 509, 520 (Iowa 2003) (requiring the applicant to prove "the alleged ground of fact could not have been raised earlier . . . [and] a nexus between the asserted ground of fact and the challenged conviction" for the exception to apply). Instead, the court proceeded directly to the merits of whether Haines could establish a *Brady* violation.

The court's ruling on a statute-of-limitations defense, such as whether an exception applies, is reviewed for correction of errors at law. *See id.* at 519. "[W]e employ a de novo review of the court's ruling on the asserted *Brady* violation." *Id.*

We first consider whether Haines's claim survives the statute of limitations. *See Schmidt v. State*, 909 N.W.2d 778, 799 (Iowa 2018) ("[W]e do not reach the merits of a claim based on a new ground of fact in deciding whether the exception

---

[4] As Haines recognizes, the alleged error relates only to his conviction for second-degree sexual abuse involving A.H.—not the conviction related to sexual acts perpetrated upon S.H.

to the three-year statute of limitation applies."). Because the blank document was not in the file of Haines's trial attorney or his first PCR attorney,[5] we agree that the issue could not have been raised within the applicable period. *See id.* Additionally, assuming the blank document was a result of A.H.'s failure to make a mark on the drawing when asked by the county attorney to mark where Haines touched her, the evidence also meets the nexus requirement. *See id.* ("[A] ground of fact is 'relevant' if it is the type of fact 'that has the potential to qualify as material evidence for purposes of a substantive claim under section 822.2.'" (citation omitted)). In determining whether the exception to the statute of limitations applies, we do not determine the ultimate value of the evidence claimed by Haines; we focus on whether the evidence "has the *potential* to qualify as material evidence that probably would have changed the outcome" of Haines's case. *Id.*

Because the evidence of the blank drawing could not have been raised during the applicable time period and there is a nexus between the evidence and Haines's conviction for sexual abuse in the second degree as it relates to A.H., Haines's claim survives the statute of limitations.

Next we must consider whether Haines can prove a violation of due process. In order to do so, Haines has the burden to establish "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Harrington*, 659 N.W.2d at 521–22

---

[5] There was some question before the PCR court whether the blank document was its own document or whether it was a copy of the exhibit created at trial when A.H. was asked to mark the anatomical drawing where A.H.'s crayon markings failed to show up. While that question is ultimately one for the trier of fact to determine, it was undisputed that neither Haines's trial attorney nor his first PCR attorney were aware of the blank drawing.

(citation omitted). In order to be successful, Haines must establish each of the three elements. *See id.*

The PCR court considered the first element and concluded Haines could not establish the State suppressed evidence. The court stated:

> At this trial, the State cross-examined Mr. Haines' counsel from the underlying trial about the "suppressed evidence" and whether he had seen the particular drawing in question, showing the front of a young girl, during his representation of Mr. Haines. The State then offered State's Exhibit A, which was an original exhibit admitted at the underlying trial showing the front of a young girl with orange crayon markings. When viewed together, both aforementioned exhibits appear to actually be the same drawing, only the one offered by [Haines] looks to be a faded grayscale copy.

While it is possible the blank drawing offered by Haines is just a poor copy of the original exhibit completed by A.H. during trial, we have no evidence in the record to support that determination. We agree the anatomical figure is the same, but as both would have been supplied by the county attorney's office, that does nothing to convince us the blank drawing is just a poor copy of the trial exhibit. There are otherwise no markings on the blank drawing that link the two versions.

However, we agree with the PCR court that Haines's due process claim fails. Contrary to Haines's assertion, a blank drawing, without any context, is not favorable to Haines. He argues that A.H. was asked to mark the drawing where Haines touched her and then did not make any markings, but nothing in the record supports this assertion. At the PCR hearing, the county attorney who prosecuted the underlying case testified it was generally her practice at that time to meet with alleged victims of sexual abuse before trial, and Haines's second PCR attorney referenced a bill from the guardian ad litem (GAL) that indicated the GAL was present with the prosecuting attorney and the children at five pretrial meetings.

Additionally, the county attorney testified she would "sometimes" have young children execute an anatomical drawing in a pre-trial meeting before she asked them to do so while testifying at trial. But there was no indication A.H. was asked to do so here, or that if she was asked, she specifically chose not to mark the drawing as an indication she had not been touched by Haines.

And we cannot say the evidence of the blank drawing was material to the issue of guilt. In contrast to *Harrington*, where the defendant maintained his innocence throughout and the prosecution failed to disclose police reports identifying an alternative suspect, Haines never denied he perpetrated sexual acts upon A.H. 659 N.W.2d at 523. Rather, he based his defense on a claim of insanity, which the existence of the blank drawing does not bolster. Now on appeal, he argues that his entire defense strategy would have changed if he knew this exculpatory evidence existed, but even if it had, Haines cannot establish that "there is a reasonable probability that, had the [blank drawing] been disclosed, the result of the proceeding would have been different. *Id.* (citation omitted). Even if Haines had chosen to rebut the State's allegations based upon the evidence of the blank document, our confidence in the court's verdict is not undermined. *See Strickler v. Greene*, 527 U.S. 263, 290 (1999) ("[T]he materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the [factfinder's] conclusions. Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (citation omitted)). Here, there was testimony from a number of witnesses that Haines had admitted committing sexual

acts upon A.H., the doctor testified about physical evidence that corroborated the perpetration of sexual acts, and A.H. testified at trial that such acts occurred.

Haines's claim regarding an alleged *Brady* violation fails.  We affirm.

**AFFIRMED.**